UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CYNTHIA SANDERS

    Plaintiff

vs.

CARNIVAL CORPORATION, d/b/a
CARNIVAL CRUISE LINES, INC.

    Defendant.

## COMPLAINT

**COMES NOW**, the Plaintiff, **CYNTHIA SANDERS**, by and through undersigned counsel, and sues the Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES, INC., further states as follows:

### GENERAL ALLEGATIONS

1. This is a cause of action which is brought in the District Court for the Southern District, Florida pursuant to 28 U.S.C. 1333 and the forum selection clause of Plaintiff's passenger cruise ticket with Defendant. The cause of action is in excess of $75,000.00. There is diversity of citizenship. Plaintiff is a resident of the state of Texas.

2. Defendant CARNIVAL CORPORATION, d/b/a CARNIVAL CRUISE LINES, INC., (hereinafter :"CARNIVAL") is, upon information and belief, a foreign corporation, which is licensed to do

business in Florida as a cruise line.  Defendant's base of operations is in Miami, Dade County, Florida.

3. Plaintiff has complied with all conditions precedent to filing this suit.

4. The incident which is the subject matter of this case was caused by the negligence of CARNIVAL through its policies and procedures established at its headquarters in Miami, Dade County, Florida and in combination with the operation of a tour by a tour operator known as Vallarta Adventures located in Puerto Vallarta, Mexico.

5. At all times material, Plaintiff was a fare-paying passenger aboard a the CARNIVAL MIRACLE, a passenger cruise ship which was owned and/or operated by Defendant CARNIVAL.

6. On or about January 4, 2015, at the start of Plaintiff's cruise, CARNIVAL promoted and sold Plaintiff a whale watching tour operated by Vallarta Adventures, an independent contractor, in Puerto Vallarta, Mexico, as part of Plaintiff's cruise experience with CARNIVAL.

7. The whale watching tour in Puerto Vallarta, as operated by Vallarta Adventures, as sold to Plaintiff, required Plaintiff and other passengers from the ship to board another vessel, in this case a zodiac-type of inflatable boat, presumably owned and/or operated by Vallarta

Adventures, to whale watch. Plaintiff was not told that the tour operator would also board additional passengers it would pick up after it left the cruise ship.

8. CARNIVAL, as an ocean-going passenger vessel operator, knows (or should know through the exercise of reasonable care) that passengers are entitled to a safe means of transportation on tours over open water on the ocean.

9. CARNIVAL knows (or should know) that the failure to have a safe means of transportation on a zodiac-type of inflatable boat creates and carries with it a risk of serious bodily injury. CARNIVAL requires the tour operator to carry a million dollar insurance policy which benefits the Plaintiff and to retain trial counsel and indemnify it from any lawsuits such as this one brought by Plaintiff against it for personal injuries arising out of the negligent operation of the whale watching tour CARNIVAL sells to its passengers, such as is alleged herein.

10. Dangers that passengers on zodiac-type boats encounter include but are not limited to falling out of the boats and into the sea, and/or drowning, or otherwise being seriously injured, as was the case here, if the boat is not operated properly and safely, in particular from the

> boat being operated at too high a rate of speed for conditions, by overloading the boat or by not having sufficient number of handholds to be properly secured in the boat, or by not properly training and supervising operators, guides and drivers of the boat or by using a boat that was not suited to its particular purpose.

11. The Vallarta Adventures whale watching tour in Puerto Vallarta, Mexico should be conducted by guides who are trained and supervised appropriately and/or experienced enough to operate a vessel on the ocean in a reasonably safe operating condition for what is an inherently dangerous activity.

12. CARNIVAL is engaged in the business of providing a cruise vacation experience to the public.  Part of this experience is the participation in shore excursions which are sold via the internet to prospective passengers or on board the cruise ship.  CARNIVAL advertises these tours in its literature and on its web site.  CARNIVAL conducts shore excursion talks on board the cruise ship which highlight and tout the shore excursions sold by CARNIVAL to its passengers. CARNIVAL first recommends and then sells the shore excursion tours it partners with to its passengers such as Plaintiff herein.

13. Defendant CARNIVAL chose or selected the company which would be the operator of the whale watching tour.  The excursion operator in this instance Vallarta Adventures and CARNIVAL shared in the revenue collected by CARNIVAL for the tour, with the lion's share of the revenue going to CARNIVAL.

14. Defendant CARNIVAL, through its onboard personnel specifically employed for this purpose, organized the excursion for its passengers and took payment from passengers (and Plaintiff), charging the cost of the tour to her onboard charge account.  When the time for the excursion arrived, CARNIVAL made an announcement on the ship and directed passengers and Plaintiff to the tour where she connected with the tour operator with the other passengers who had purchased the tour.

15. Defendant CARNIVAL owed Plaintiff a duty of reasonable care in the circumstances in selecting the tour operator to provide the whale watching tour to Plaintiff.

16. Defendant CARNIVAL did not use reasonable care in the circumstances in selecting the tour operator to conduct the whale watching tour on which Plaintiff was injured, in the following particulars:

a.) The zodiac vessel's operators and guides were not properly trained, supervised or experienced, and/or;

b.) There were too many passengers allowed on board the zodiac vessel for safe operation, and/or;

c.) There was no effective assistance for passengers such as Plaintiff during the tour, and/or;

d.) There were insufficient instructions given to passengers such as Plaintiff in how to safely protect themselves during the operation of the tour, and/or;

e.) The tour boat was operated at an excessive and dangerously high rate of speed for conditions, and/or;

f.) The tour employees were inattentive during the tour, and/or;

g.) The tour boat had an insufficient number of handholds to use safely during the tour, and/or;

h.) The tour boat was a small vessel that was affected by wave action and by wakes by other vessels passing by, especially when operated at a high rate of speed, and/or;

i.) The tour guide and driver allowed additional passengers to board the zodiac who were not cruise ship passengers;

    j.)    The tour operator allowed too many passengers to board the vessel for safe operation under the then and there prevailing sea conditions which were reasonably foreseeable, and/or;

    k.)    The tour operator used a vessel that was not particularly suited for its purpose, and/or;

17. As a result of the failures by Defendant CARNIVAL to use reasonable care in the selection of the whale watching tour, the Plaintiff was seriously injured on or about January 7, 2015.

## COUNT ONE- OPERATIONAL NEGLIGENCE IN SELECTING THE SHORE EXCURSION TOUR AND FAILURE TO WARN

18. Plaintiff reavers and realleges paragraphs One through Seventeen as if set forth herein.

19. At all times material Defendant owed Plaintiff a duty of reasonable care in the circumstances in selecting the whale watching shore excursion tour it sold to Plaintiff herein.

20. Because this particular tour activity carries with it a risk of serious bodily injury and/or death if not performed properly, and Defendant knew or should have known that, Defendant owed Plaintiff a duty to make a reasonable but thorough investigation of the tour and not simply inquire if the tour operator was generally reputable in Puerto Vallarta, Mexico and only select a tour that would be operated safely.

21. Acting under the exercise of reasonable care, Defendant knew or should have known that the tour operator does not enforce a weight or passenger limit on its zodiac boats nor does it have speed limits for the zodiac boats and/or does not enforce speed limits for the boat on the tour and other failures.

22. Acting under the exercise of reasonable care in the circumstances, Defendant ought to have warned Plaintiff of these dangers that Defendant knew or should have known about but which Plaintiff could not know under the exercise of reasonable care in the circumstances.

23. The tour operator has a financial incentive to overload its boats and a practice of accepting passengers on board who did not purchase the tour onboard ship.

24. Defendant, in selecting a tour under these conditions, owed Plaintiff a duty to warn of dangers inherent to the tour that Plaintiff herself could not and did not discover under the use of reasonable care at a port of call on Plaintiff's cruise with Defendant.

25. Notwithstanding Defendant's duty as aforesaid, Defendant breached its duty by unreasonably:

a. Failing to use reasonable care in the circumstances in selecting the tour on which Plaintiff was injured in regard to the quality and training and experience of the tour's employees, and/or;

b. Failing to warn of the aforesaid dangers of and the conditions under which the tour would be conducted, that Defendant knew or should have known about, having selected the tour, but which Plaintiff could not know using reasonable care and/or;

c. Failing to properly train its employees in how to properly select a shore excursion tour which involved an inherently dangerous activity, or an activity which Defendant knew or should have known through the use of ordinary care that other passengers had been or could be seriously injured participating in similar tours, and/or

d. Failing to use reasonable care in the circumstances in investigating whether information it was given regarding the procedures and guides available by the tour operator on which Plaintiff was injured was, in fact, true and/or;

e. Failing to use reasonable care in the circumstances in not requiring that the tour operator have reasonably safe procedures

       and trained and experienced guides or seamen available for the tour on which Plaintiff was injured.

26. As a result of the foregoing, the Plaintiff was injured when she was on a whale watching tour selected for her and sold to her by CARNIVAL. After Plaintiff embarked on the zodiac boat, the tour operator boarded extra passengers from shore and overloaded the boat. Additionally, an unsafe seating situation was created with a lack of adequate handholds. The driver then drove the boat at an excessively high rate of speed for the sea conditions then prevailing, ultimately causing Plaintiff to bounce up in the air and land hard on her seat, causing compression fractures at the twelfth thoracic and first lumbar vertebrae and additional injuries.

27. When passengers on the zodiac complained about the excessive rate of speed, they were told that the boat had to hurry and go fast in order to see the whales. If there was a delay in getting to the whale watching area, it was caused by the tour operator stopping to board extra passengers after Plaintiff and the other cruise ship passengers from CARNIVAL had embarked on the tour boat.

28. At all times material, Plaintiff acted with due care for her own safety.

29. As a result of the negligence of the Defendant as aforesaid, the Plaintiff was injured in and about her body and extremities and suffered pain, mental and emotional distress and anguish therefrom; incurred medical expense and physical handicap and a loss of the ability to enjoy life; suffered a loss of earnings and loss of earning capacity, suffered an aggravation of known and/or unknown pre-existing conditions, suffered a loss of enjoyment of the cruise and a loss of ability to enjoy life.  Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

WHEREFORE, Plaintiff demands judgment from Defendant for damages, pre-judgment interest and costs.  Jury trial is demanded.

Dated December 29, 2015.

>   PAUL M. HOFFMAN, P.A.
>   2881 East Oakland Park Boulevard
>   Fort Lauderdale, FL 33306
>   Telephone:  (954) 707-5040
>   Telefax:     (561) 892-7810
>
>   By:   */s Paul M. Hoffman*
>         PAUL M. HOFFMAN
>         Florida Bar No:   0279897